## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  08-61294-CIV-ALTONAGA/Brown

**ERICK KELECSENY**, *et al*.,

       Plaintiffs,

vs.

**CHEVRON, U.S.A., INC.**, a
Pennsylvania corporation, *et al*.,

       Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court Motion by Plaintiff, Ken Terrell ("Terrell"), for Class

Certification ("Motion") [D.E. 443],[1] filed on October 9, 2009.  The Court has carefully considered

the parties' written submissions, oral arguments presented on November 9, 2009, and applicable law.

### I.  BACKGROUND

This case arises from damage to boats in the State of Florida allegedly caused by ethanol

blended gasoline, commonly known as E10.  The E10 gasoline currently available in Florida is a

blend of ethanol-free hydrocarbon gasoline and approximately 10 percent fuel-grade ethanol.  (*See*

Certain Defendants' Memorandum in Opposition to Class Certification ("*Opposition*") [D.E. 423]

at 4).  Recent federal and state legislation require that ethanol usage be expanded, and that gasoline

contain 9 to10 percent ethanol by December 31, 2010.  (*See id*.).  During 2008 and 2009, the amount

of ethanol-blended gasoline in the State of Florida increased.  (*See id*.).  In Florida, a statutory

---

[1] The Motion for Class Certification was originally filed on September 9, 2009 under seal.  However, the Court denied the Motion to Seal, causing the Motion to be removed from the docket.  The Motion was re-filed on October 9, 2009 as docket entry 443, but Responses to the Motion were filed on October 2, 2009, with docket entry numbers 422 and 423.

Case No. 08-61294-CIV-ALTONAGA/Brown

exemption to the 10 percent mandate exists for fuel sold for use in boats and other watercraft.  (*See id*.).  Although fuel sold for use in watercraft is not prohibited from containing ethanol, it is not required to contain the 10 percent level by 2010.  (*See id*.).

Terrell, the only remaining named Plaintiff (*see* [D.E. 387]), sues several Defendant gasoline manufacturers who have produced and/or marketed the ethanol blended gasoline (E10) used by Plaintiff and the proposed class members for use in their boats and similar watercraft in Florida without adequate warnings to consumers.  (*See* Third Amended Complaint ("*Third Am. Compl.*") [D.E. 141] ¶¶ 8, 9).  While Defendants do not refute that E10 can cause damage to boats (*see* Plaintiff's Motion for Class Certification ("*Motion*") [D.E. 443] at 1; *Opposition* at 6), Defendants maintain that Plaintiff vastly overstates the extent of the problem.  (*See Opposition* at 6).  Specifically, Terrell asserts that E10 can cause the following problems:

- • difficulty starting the engine or rough engine operation
- • engine overheating
- • engine fires
- • bent push rods
- • damaged pistons
- • vapor lock
- • fouled spark plugs
- • fuel leaks
- • black carbonatious covered engine valves
- • reduced octane
- • destruction of elastomers, o-rings, and other fuel system components
- • corrosion of aluminum tanks
- • corrosion of metals
- • degradation of fiberglass tanks and resins[2]

---

[2] As to the damage to fiberglass tanks, Terrell maintains that a single use of E10 can begin the degradation process, for which there is no remedy.  However, only certain types of fiberglass tanks are affected by E10.  Fiberglass fuel tanks are composed of either polyester or vinyl ester resins; Terrell's expert conceded that isophthalate polyester resins are compatible with E10, and some vinyl ester resins may be

Case No. 08-61294-CIV-ALTONAGA/Brown

- damage to fuel filters
- phase separation and damages related thereto

(*See Motion* at 7).

Terrell further asserts that Defendants were well aware of these problems.  (*See id.* at 5).
Terrell claims Defendants had special measures in place to be sure their storage tanks would be
compatible with E10 and its known dangerous propensities, particularly regarding phase separation.
(*See id.*).  He points to numerous publications by the ethanol and petroleum industry indicating
Defendants were attempting to avoid problems caused by ethanol within the industry.  For example,
the American Petroleum Institute issued a report stating, "[f]iberglass reinforced plastic tanks may
or may not be suitable for storing ethanol or ethanol blend.  Resins have changed since fiberglass
reinforced plastic tanks were initially fabricated, and the manufacturer should be consulted in
determining the compatibility of materials."  (*Id.* at 8) (citation omitted).  Chevron prepared an in-
house publication in which it stated that because phase separation may occur in the presence of
water, "extra care should be taken when gasoline oxygenated with ethanol is used as fuel for boat
engines."  (*Id.*) (citation omitted).

Some Defendants have, in other countries, posted warning signs that E10 may not be suitable
for use in boats.  (*See Motion* at 1).  As one example, Defendant British Petroleum Company ("BP")
published a brochure for use in Australia containing the following warnings:

> **Water and ethanol don't mix** - while new BP Unleaded 91 with ethanol is great for
> most cars, avoid using it in your boat.

\* \* \*

---

compatible with E10. (*See* Certain Defendants' Sur-Reply ("*Sur-Reply*") [D.E. 483] at 2).

Case No. 08-61294-CIV-ALTONAGA/Brown

> Ethanol-blended fuel may soften plastic and certain fiberglass components in a boat's fuel tank, causing them to leech resin and damage filters and injectors.
>
> In moist environments (e.g. on the water) your petrol tank may 'sweat', forming condensation. This condensation may then be absorbed by the ethanol, causing it to separate from the rest of the fuel and sink to the bottom of the tank. This process, known as phase separation, can lead to poor engine performance (e.g. knocking and pinging) and ignition difficulties.

(*Id.* at 9; *BP Brochure*, Exhibit 1 [D.E. 443-1] at 2-3). Shell similarly provided a warning to Australian, but not American, consumers: "Can I use Shell Unleaded E10 in my marine craft, ultra-light aircraft, motorbike or two-stroke engine? No. Shell Unleaded E10 should not be used in boats, jet skis, ultra light aircraft or other equipment without first consulting the manufacturer." (*Id*. at 10; Ex. 13).

Some warnings about the use of E10 in boats have been available in Florida for some time. Numerous articles have appeared in boating magazines, some boat manufacturers provide E10 warnings in their owners' manuals, and many marine mechanics are aware that E10 may cause problems in certain types of boats. (*See Opposition* at 30). Moreover, a great deal of information regarding marine engines and E10 incompatibility can be found on the internet, as well as by word-of-mouth throughout the boating community. (*See* November 9, 2009 Hearing ("*Hearing*") at 79-80). Additionally, some marinas post very specific warnings that boaters should carefully consider whether to use E10 or a non ethanol blended gasoline, as E10 can potentially harm their boats. (*See id*. at 87).

Terrell has purchased fuel for his boat from various gas stations throughout southern Broward County, Florida. (*See Motion* at 21). Terrell generally has not purchased fuel at marinas, but instead uses a fuel caddy, driving around Broward County seeking the lowest priced gasoline in the area.

4

Case No. 08-61294-CIV-ALTONAGA/Brown

(*See id*.). Terrell has identified the numerous stations at which he purchased E10. (*See id*.). Terrell originally had a fiberglass fuel tank in his boat, but has since had the tank replaced with an aluminum fuel tank. (*See Opposition* at 6, 29). Even now that he is aware of the dangers of E10 in marine applications, Terrell continues to buy E10 from roadside stations rather than purchasing ethanol-free fuel from marinas. (*See id*. at 6).

Terrell originally filed suit against Defendants, numerous gasoline and ethanol manufacturers, distributors, and suppliers in a three-count complaint.[3] Terrell withdrew two counts – for fraudulent concealment, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") – and has proceeded on a single count: failure to warn. Terrell seeks monetary and injunctive relief against all Defendants under a "market share" theory of negligence, based on *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 286 (Fla. 1990), because "[d]ue to the general methods for the use and distribution of gasoline used to fuel boats, Plaintiffs do not know the identity of each of the named Defendants that sold the ethanol blended gasoline that they purchased for use in their boats." (*Third Am. Compl.* ¶ 30). *Conley* instructs that plaintiffs who cannot identify the manufacturer of the product that caused the injury may avail themselves of a market share theory of liability by alleging they made reasonable attempts to identify the manufacturer(s) responsible for their injuries, but were unable to do so. *Id.* at 285.

Terrell now moves to certify two classes by which to litigate this action. Initially, in his Motion, Terrell sought to certify four separate damages classes, along with an injunctive class. Over the course of the briefing, Terrell dropped three of the damages sub-classes, and instead seeks

___

[3] Terrell was not the original proposed class representative.

Case No. 08-61294-CIV-ALTONAGA/Brown

certification only as follows: (1) a damages class made up of boat owners who have polyester or vinyl ester resin fiberglass fuel tanks ("fiberglass tanks"); and (2) an injunctive "warning" class. Defendants oppose Terrell's Motion.

## II.  LEGAL STANDARD

"Questions concerning class certification are left to the sound discretion of the district court." *Cooper v. Southern Co.*, 390 F.3d 695, 711 (11th Cir. 2004) (citing *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998)).  With this "great power comes great responsibility; the awesome power of a district court must be 'exercised within the framework of [Federal Rule of Civil Procedure] 23.'"  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

To be entitled to class certification, the sole named Plaintiff, Terrell, must have standing and meet each of the requirements specified in Federal Rule of Civil Procedure 23(a) as well as the requirements of at least one subsection of Fed. R. Civ. P. 23(b).  *See Klay*, 382 F.3d at 1250.  While Terrell's standing was challenged[4] as to one of his original, proposed sub-classes, the issue appears to have been resolved by Terrell's abandonment of that proposed sub-class.  Hence, Terrell's standing is assumed for purposes of the class certification analysis as it pertains to the damages class, but is addressed separately as to the warning class in Section III, B.2.d., *infra*.

_____

[4] Whether Terrell, the only remaining named Plaintiff, has standing to assert the claims presented is a "threshold legal issue subject to *de novo* review."  *Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1022 (11th Cir. 1996).  As to his proposed damages class, Terrell appears to satisfy "the individual standing prerequisites, [as he is] . . . ' . . . part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (alterations added) (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

6

Case No. 08-61294-CIV-ALTONAGA/Brown

A plaintiff seeking certification of a claim for class treatment must propose an adequately

defined class that satisfies the requirements of Rule 23, Federal Rules of Civil Procedure.  These

requirements are frequently denominated "'the prerequisites of numerosity, commonality, typicality

and adequacy of representation,' and they are designed to limit class claims to those 'fairly

encompassed' by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d

1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982)).

Rule 23(a) provides that class certification is only appropriate where:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are
> questions of law or fact common to the class, (3) the claims and defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

As stated, the class must also satisfy one of the three additional requirements of Rule 23(b).

Terrell asserts a class is appropriate under either or both Rule 23(b)(2) and 23(b)(3).  Under Rule

23(b)(2), the Court may certify a class if "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

relief is appropriate respecting the class as a whole."  Rule 23(b)(3) provides that certification is

available if the Court finds "that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."

In examining whether the party seeking certification has satisfied the requirements of Rule

23, the court should not consider the merits of the proponent's claims.  *See Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 177-78 (1974).  The Eleventh Circuit, however, has counseled that this

principle is not to be applied blindly so as "to artificially limit a trial court's examination of the

7

Case No. 08-61294-CIV-ALTONAGA/Brown

factors necessary to a reasoned determination of whether a plaintiff has met [the] burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984); *see also Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009).

## III.  ANALYSIS

In its final form, Plaintiff's Motion seeks certification of a single damages class and an injunctive class.  Each proposed class is considered below.

### A.      The Damages Class

The damages class is defined as owners of boats in the State of Florida whose fuel tanks are composed of polyester of vinyl ester resin fiberglass fuel tanks ("fiberglass tanks").  (*See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification ("*Reply*") [D.E. 465] at 3).

### 1.      Whether the Class is Ascertainable

Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered.[5]  *See O'Neill v. The Home Depot U.S.A. Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006) (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003)).  "In order for a party to represent a class, the class sought to be represented must be

---

[5]  While some courts have evaluated the adequacy of class definition as part of the numerosity analysis of Rule 23(a)(1), *see In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 612 (N.D. Ga. 1997) (citing *Earnest v. General Motors Corp.*, 923 F. Supp. 1469, 1473 & n.4 (N.D. Ala. 1996)), others examine the question separately, before engaging in the Rule 23 analysis.  *See Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 346 (S.D. Ga. 1996) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).  Irrespective of the manner in which the question is reached, the definition of the class must be accurately delineated in order for the class to be certified.  *See Mauldin v. Walmart Stores, Inc.*, No. 01-cv-2755, 2002 WL 2022334, at *8 n.2 (N.D. Ga. Aug. 23, 2002) (citing *DeBremaecker*, 433 F.2d at 734).

Case No. 08-61294-CIV-ALTONAGA/Brown

adequately defined and clearly ascertainable." *Fisher v. Ciba Specialty Chemicals Corp.*, 23 F.R.D. 273, 301 (S.D. Ala. 2006) (citing *DeBremaecker*, 433 F.2d at 734) ("A precise definition is essential to identify those entitled to notice and those bound by a judgment.")). "[A] vague class definition portends significant manageability problems for the court." *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001).

According to Terrell, the damages class consists of approximately 680 boat owners. This number is derived from a review of all boat registrations in the State of Florida. Terrell's expert contacted the various manufacturers of registered boats, inquired as to which models were fitted with fiberglass fuel tanks, and came up with the number of 680 as the proposed class. Defendants point out serious problems with this methodology. First, they note that the proposed class may leave out numerous potential class members who have simply not registered their boats. The proposed class also includes numerous potential class members who never purchased E10 for their boats and cannot possibly seek damages from the Defendants.

Moreover, the proposed class would require individualized hearings in order to determine whether a potential class member is a proper member of the class. As to each proposed class member, the Court would have to determine, for example: (1) whether the individual owns the boat; (2) whether the individual purchased E10 in Florida (would a gas station bill, if kept, show the purchase was for E10, *and* that the E10 was placed in the fuel tank of the boat and not purchased for some other use; if not shown on the bill, would testimony or some other form of proof be required?); (3) whether the boat is equipped with a fiberglass fuel tank; (4) whether the fiberglass fuel tank is of the type that is incompatible with E10; and (5) whether the fuel tank has degraded or suffered

9

Case No. 08-61294-CIV-ALTONAGA/Brown

damage, and from what cause or causes.  Because Terrell's damages theory assumes that fuel tank

degradation can occur from a single use of E10, the Court would also have to inquire whether the

boat owners – or any predecessor owners – had ever taken their boats out of Florida and purchased

E10 in another state, perhaps at a time before E10 was available in Florida.

Simply to determine whether certain individuals may be in the class, detailed individual

inquiry is required.  As one court has explained, "[b]ecause it would be impossible to definitively

identify class members prior to individualized fact-finding and litigation, the proposed classes and

sub-class fail to satisfy one of the basic requirements for a class action under Rule 23 of the Federal

Rules of Civil Procedure." *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D. Pa. 2000).  *See*

*also Metabolife Int'l Inc.*, 218 F.R.D. at 269 ("A court should deny class certification where the class

definitions are overly broad, amorphous, and vague, or where the number of individualized

determinations required to determine class membership becomes too administratively difficult.").

From the outset, the damages class does not appear well suited for class certification.

         2.     <u>Certification under Rule 23(a)</u>

         a.     *Numerosity*

The numerosity requirement of Rule 23 requires a district court to determine "whether 'the

class is so numerous that joinder of all members is impracticable.'" *Vega v. T-Mobile USA, Inc.*, 564

F.3d 1256, 1266-67 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a)(1)).  As a general rule, a group

of more than 40 satisfies numerosity, a group of fewer than 21 does not, and the numbers in between

are subject to judgment based on additional factors.  *Id*. at 1267.  The Eleventh Circuit has explained

that "'[a]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff

Case No. 08-61294-CIV-ALTONAGA/Brown

need not show the precise number of members in the class.'" *Id*. (quoting *Evans v. U.S. Pipe & Foundry Co*., 696 F.2d 925, 930 (11th Cir. 1983)).  Nonetheless, a plaintiff seeking to certify a class must make a showing with factual support that the numerosity requirement will be satisfied.  *Id*.

In this case, Terrell claims the numerosity requirement is satisfied.  Terrell asserts there are approximately 680 registered boat owners in the State of Florida whose boats are equipped with fiberglass fuel tanks.  Terrell concludes that even if some of these boat owners were somehow excluded from the class, there would certainly be at least 40 remaining members, thereby satisfying numerosity as a matter of law.  And yet, Defendants have identified numerous means by which potential members could be excluded from the proposed class.  First, Defendants note that not all fiberglass tanks are incompatible with E10.  In fact, only fiberglass tanks composed of non-isophthalate resins are incompatible with E10.  Fiberglass tanks made of isophthalate resins are unaffected by E10, and owners of those boats could not, therefore, be part of the damages class.  Notably, Terrell has provided no numbers  –  not even a rough estimate  –  as to how many of the 680 boats with fiberglass fuel tanks are composed of non-isophthalate resins and are therefore appropriate members of the proposed damages class.

Defendants also point out that the majority of the boats with incompatible fuel tanks were built in the 1980s or perhaps the early 1990s.  It is unknown whether the fuel tanks have been replaced in these 20 to 30-year old boats.  Terrell himself, for example, has had his fiberglass fuel tank replaced with an aluminum tank.  There is no way of knowing how many other of the 680 boats that were originally built with fiberglass fuel tanks have had their tanks replaced, either with compatible fiberglass tanks or with aluminum tanks, and when such replacement occurred (before

11

Case No. 08-61294-CIV-ALTONAGA/Brown

or after any proven use of E10), factors which could render a boat owner ineligible for class membership.

Defendants also note that some boats have diesel engines and could not use E10 in any event. Terrell's class definition does not exempt diesel powered boats with fiberglass fuel tanks from the proposed class. And while Terrell could conceivably contact the manufacturers of the 680 boats currently owned by potential class members and inquire as to whether the engines as originally installed used gas or diesel fuel, even that additional inquiry does not rule out boats that were originally equipped with a gasoline engine, but whose owners decided to replace the engine with one that burns diesel fuel.

Terrell argues that his starting number of 680 is so large, and Defendants' attempts to carve boats out of the total number so speculative, that numerosity must be satisfied. The U.S. Court of Appeals for the Eleventh Circuit, however, has recently made it abundantly clear that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and a plaintiff is not permitted to make a purely speculative showing that numerosity has been met. In *Vega*, the court reversed the district court's finding that numerosity had been met under a similar factual presentation. 564 F.3d at 1267-68. The district court had considered the fact that the proposed class in question was made up of employees of defendant, T-Mobile, and that those employees numbered, during the time period in question, "in the thousands." *Id*. at 1267. In reversing, the court stated:

> Yes, T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1). However, a plaintiff still bears the burden of

Case No. 08-61294-CIV-ALTONAGA/Brown

> establishing every element of Rule 23, *see Valley Drug*, 350 F.3d at 1187,[6] and a
> district court's factual findings must find support in the evidence before it.

*Id*.

Here, while it is possible that Terrell's proposed class could satisfy the numerosity requirement, he has not made a clear showing that the number of actual class members will be so high that "joinder of all members is impracticable." *Id*. (quoting Fed. R. Civ.P. 23(a)(1)).

> b.     *Commonality*

The commonality requirement of Rule 23(a) "'does not require that all the questions of law and fact raised by the dispute be common' . . . or that the common questions of law or fact 'predominate' over individual issues." *Vega*, 564 F.3d at 1268  (quoting *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986)).  Rather, "[t]he commonality requirement demands only that there be 'questions of law or fact common  to the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2).

In this case certain common issues of law and fact exist among all class members.  Two  key issues in this case are (1) whether ethanol causes damage to fiberglass fuel tanks, and (2) whether Defendants were aware of the danger and chose not to warn the public of the potential danger of using E10 in their boats.  Those factual issues are common to all members of Terrell's proposed class.  A great deal of scientific and expert testimony is required to determine whether E10 causes damage to certain types of fiberglass fuel tanks, as well as the type and extent of that damage.  Certainly, it would be expedient to present highly detailed, expert testimony only one time, rather

---

[6] *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003).

13

Case No. 08-61294-CIV-ALTONAGA/Brown

than many times.  Similarly, the issue of Defendants' knowledge  –  which could consist of the review of numerous documents going back years and testimony of Defendants' principals  –  would be better handled in one trial rather than in many trials.

Additionally, the question of Terrell's "market share theory" of liability involves questions of both law and fact common to all class members.  The market share theory, developed in Florida law through *Conley*, allows a plaintiff who has been damaged, and who, after diligent efforts to determine which particular defendant caused her damages cannot do so, to sue defendants collectively in a market share analysis.  570 So. 2d 275.  The market share liability analysis is fact intensive as well as legally complex, and would ideally be applied once, in a class action.  In this case, Terrell will need to prove that he was damaged by E10, and that although he has attempted to determine which of the Defendants sold him the E10 that caused the damage to his boat, he simply cannot.  Terrell alleges that E10 and its component parts are fungible, and that manufacturers of the product engage in swapping, sharing, and blending their products such that it is impossible trace the origins of E10.  The evidence to support this theory is clearly common to all potential class members.[7]

The Eleventh Circuit explained that the commonality requirement is a "relatively light burden." *Vega*, 564 F.3d at 1268.  Given that common questions of fact and law exist among class members, that burden is met in this case, and the commonality prong of the Rule 23(a) analysis is

---

[7] The Court notes, however, that this may not necessarily be the case for every potential class member.  For example, there may be boat owners who routinely purchase fuel for their boats from the same land-based or marina gas station, and who will therefore have no difficulty identifying which of the named Defendants allegedly caused their damage, if any, from a failure to post warnings.  For these boat owners, the market share theory is inapplicable.

Case No. 08-61294-CIV-ALTONAGA/Brown

satisfied.

c.   *Typicality*

The typicality prong requires that the claims and defenses of the representative parties be typical of the claims or defenses of the class.  *Vega*, 564 F.3d 1256.  "'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).'"  *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)).  "'[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Id.* (quoting *Prado-Steiman*, 221 F.3d at 1279).

Terrell asserts his claims and defenses are typical of the claims and defenses of the damages class.  He states that "he, like the rest of Florida boaters, was not adequately warned by the Defendants."  (*Reply* at 21).  He further maintains that his claim is typical of the class because he suffered damage to a fiberglass fuel tank due to E10, and the rest of the class members suffered identical damage.  (*See id.*).  Terrell argues that, like every other class member, he is unable to determine which Defendant's product caused the damage to his boat and must avail himself of the market share theory of liability.  (*See Motion* at 25).

Terrell relies on *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984), in support of his assertion that he satisfies the typicality requirement.  In *Kornberg*, the court stated that typicality will be satisfied where "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* at 1337. Terrell argues that, in accordance with *Kornberg*, his damages arise from the same pattern or practice

15

Case No. 08-61294-CIV-ALTONAGA/Brown

– *i.e.*, the Defendants' failure to warn boaters about the dangers of E10 – so as to satisfy typicality. However, the *Kornberg* court also noted that although typicality "does not require identical claims or defenses," a factual difference in the representative's claims will render those claims atypical if the factual position of the class representative "markedly differs from that of other members of the class." *Id*. (citations omitted).

Terrell's damages claims and the defenses to those claims differ markedly from those of other potential class members. The uncontroverted expert testimony in this case establishes that the type of fiberglass tanks at issue are generally found in relatively large boats that are not suitable to be transported or carried by trailer. (*See Hearing* at 56). Owners whose boats are equipped with fiberglass fuel tanks, therefore, are most likely to purchase their fuel at marinas, where their boats are kept or to which they travel on water for fueling. In contrast, Terrell purchases fuel for his boat at numerous gas stations around Broward County by use of a fuel caddy that he carries in his pick-up truck. He buys gasoline at whichever station has the lowest price, stores the gasoline in the large fuel caddy, and then transfers the fuel from the caddy to his boat. Expert witnesses and the parties agree that this behavior is quite unusual. The difference in behavior between Terrell and other potential class members concerning their fuel-purchasing habits jeopardizes Plaintiff's ability to sue Defendants collectively under a market share theory.

In adopting the market share liability theory, the Florida Supreme Court made clear that the geographic market in question must be "as narrowly defined as the evidence in a given case allows." *Conley*, 570 So. 2d at 284 (citing *George v. Parke-Davis*, 107 Wash.2d 584, 592, 733 P.2d 507, 512 (1987)). Where it could be established that a plaintiff purchased the defective product from a

Case No. 08-61294-CIV-ALTONAGA/Brown

particular retail outlet, that outlet itself would constitute the geographic market. *Id*. Where it could be shown that a plaintiff purchased the product only within a specific city or county, that city or county would be the relevant market. *Id*. Applying that rule to this case, Terrell's unique methods of purchasing fuel render his geographic market entirely different from the market or markets for the majority of potential plaintiffs. Whereas most potential class members would have purchased their fuel at a relatively limited number of marinas (perhaps even just one), Terrell purchases his fuel at roadside gas stations in southern Broward County. As Defendants point out, Terrell has cited no case in which market share liability has been applied in a class action, and there appears to be good reason why no such case exists.[8] It is simply untenable to apply market share liability, with its requirement of the narrowest possible geographic market, to a class action consisting of members whose activities cover an entire state.

The requirement of a narrowly tailored geographic market is particularly important in market share liability cases because only with a narrow geographic market may a defendant avail itself of the defenses afforded by the market share theory. As the court explained,

> Under this theory a defendant may exculpate itself from liability by establishing, by a preponderance of evidence, that it did not produce or market the type of [defective product] taken by the [victim]; that it did not market [the defective product] in the geographic market area where the [victim] obtained the [product]; or that it did not distribute [the defective product] during the time period of the [injury].

*Conley*, 570 So. 2d at 282 (alterations added). If the Court were to accept Terrell's proposal that the relevant market is the entire State of Florida, no Defendant would be able to exculpate itself, because

---

[8] The Court engaged in independent research on this issue as well and was unable to locate a single case of market share liability applied to a class action.

Case No. 08-61294-CIV-ALTONAGA/Brown

Defendants all sell gasoline somewhere in the State.  To deny Defendants the use of market share liability defenses would unfairly prejudice Defendants, and render market share liability grossly inappropriate.

In addition to the geographic market share problem, Terrell's gasoline purchasing behavior creates a material difference between himself and other potential class members on the issue of prior knowledge of E10's propensity to harm fiberglass tanks.  While warnings generally do not exist at gasoline pumps at any roadside stations, some marinas post warnings about the use of E10 in boats.  Potential class members who purchased fuel from marinas are much more likely to have seen warning signs than would Terrell, who purchased solely from roadside stations.  Terrell's unique method of purchasing fuel for his boat creates a marked difference between his claims and defenses, and those of other potential class members.  Accordingly, the typicality requirement is not met.

> d.    *Adequate Representation*

The Eleventh Circuit has described the adequacy prong of a class certification analysis as follows:

> Rule 23(a)(4) requires that the representative party in a class action "must adequately protect the interests of those he purports to represent."  *Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir. 1974).  This "adequacy of representation" analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *In re HealthSouth Corp. Securities Litigation*, 213 F.R.D. 447, 460-461 (N.D. Ala. 2003). If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate.

*Valley Drug Co.*, 350 F.3d at 1189.  An adequate class representative must be one willing to vigorously litigate the action on behalf of the class.  *Clausnitzer v. Fed. Express Corp.*, 248 F.R.D.

18

Case No. 08-61294-CIV-ALTONAGA/Brown

647, 657 (S.D. Fla. 2008).  Finally, class counsel must be competent to undertake the litigation.  *Id.*

Terrell maintains he is an adequate representative of the proposed class members.  He has been actively participating in the case: he has worked with counsel and experts, preserved evidence, attended the inspection of his boat, responded to written discovery requests, and attended a seven hour deposition.  Terrell appears ready to vigorously litigate this case, as required.  There is no dispute regarding whether counsel for the potential class has the competence to undertake the litigation.  The only issue, then, is whether there is any conflict of interest between Terrell and the proposed class members.

Defendants contend Terrell cannot adequately represent the class.  Defendants first point out that this action originally sought to certify four damages sub-classes, and the lawsuit identified 16 different ways in which E10 damages boats.  Terrell now seeks to represent and certify a class that addresses only damage to fiberglass fuel tanks.  Potential class members who have suffered damages from E10 other than, or in addition to, the degradation of their fiberglass fuel tanks would be precluded from obtaining relief for the withdrawn damages claims under Florida law.

Members of a class are bound by the res judicata effect of a judgment in a class action. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).  Application of res judicata prevents the splitting of a single cause of action and the use of several grounds for recovery under the same action as the basis for separate suits.  *Hayes v. Solomon*, 587 F.2d 958, 982 (5th Cir. 1982).  Furthermore, Florida law explicitly prohibits claim-splitting.  "[T]he law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all."  *Gaynon v. Statum*, 151 Fla. 793, 796, 10 So. 2d 432, 433 (Fla.

19

Case No. 08-61294-CIV-ALTONAGA/Brown

1942), *superceded by statute on other grounds as stated in Goldman v. Kent Cleaners & Laundry, Inc.*, 110 So. 2d 50, 51 (Fla. 3d DCA 1959).  The Eleventh Circuit has noted that "Florida law is clear that '[t]he rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action.'"  *Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 84 F.3d 1388, 1395 (11th Cir. 1996) (quoting *Department of Agric. and Consumer Serv. v. Mid-Florida Growers, Inc.*, 570 So. 2d 892, 901 (Fla. 1990)).  This rule applies with equal force in the class action context: "By abandoning their original claims for medical monitoring, and expressly disavowing any current claim for personal injury, . . . the representative plaintiffs risk a future waiver not only of their own personal injury and medical monitoring claims, but also those of the absent class members."  *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 367 (S.D. Iowa 2008) (internal citation omitted).[9]

In this case, Terrell is pursuing damages limited to the degradation of his fiberglass fuel tank. In seeking this limited remedy, Terrell not only forecloses his own right to relief for other damage done to his boat, but forecloses the rights of all other class members.  Terrell contends that those class members who have damages in addition to the degradation of fiberglass fuel tanks may simply opt out of the class.  However, the opt-out contingency does not solve the problem with class certification.  First, Terrell initially listed a host of problems caused by E10, from ignition problems to bent push rods, damaged fuel filters, fuel leaks, even engine fires.  If all potential class members with any of the damages ostensibly caused by E10 were to opt out, there could be very few

---

[9] *Cf. Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 319 (S.D. Fla. 2001) (noting that there are exceptions that the court may utilize to prevent res judicata, such as the court expressly reserving the plaintiff's right to maintain a second action) (citations omitted).

Case No. 08-61294-CIV-ALTONAGA/Brown

individuals left to certify as a class, and the already questionable numerosity problem would be even further exacerbated. Second, if Terrell's damages are different or not as severe as the damages experienced by proposed class members, he cannot serve as an adequate representative of the class.

d.   <em>Totality of the Factors</em>

Reviewing the totality of the factors in the Rule 23(a) analysis, it is clear that Terrell's proposed damages class is not suitable for certification. The only factor favoring certification is commonality which, as the Eleventh Circuit has explained, is a "light burden." *Vega*, 564 F.3d. at 1268. None of the other requirements of Rule 23(a) have been satisfied: numerosity, while possible, has not been clearly established; typicality does not exist, as Terrell's claims and the defenses against them are unique; and Terrell is not an adequate representative of proposed class members.

3.   <u>Certification under Rule 23(b)</u>

While the foregoing analysis should suffice to conclude a discussion of the proposed damages class, the Court nevertheless turns to the remaining requirements for certification of that class. A class cannot be certified unless it satisfies not only the requirements of Rule 23(a), but also one of the requirements set forth in Rule 23(b). *Vega*, 564 F.3d at 1265. Terrell asserts certification of the damages class is appropriate under Rule 23(b)(3). Rule 23(b)(3) requires finding both (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Vega*, 564 F.3d at 1277. Predominance "is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." *Id*. at 1278.

21

Case No. 08-61294-CIV-ALTONAGA/Brown

     a.    *Predominance*

Terrell claims that common issues predominate over individualized inquiries among class members.  Terrell states:

> The common issues that directly relate to elements that the class will have to prove at trial include: Defendants' knowledge that E10 can damage fiberglass used in some boats; the sufficiency of any warnings provided by Defendants regarding the potential damage that E10 can cause to fiberglass tanks; whether Defendants all share in liability for class damages based upon market share based upon their sale of E10 and component parts; and whether E10 actually damages fiberglass tanks upon the first use, creating a potential life and safety danger.

(*Reply* at 10).  Terrell is correct that these issues are common to all class members, and judicial efficiency would be achieved by trying these issues in one trial.  However, Terrell disregards the many individualized inquiries that would be required in the proposed class action and which clearly outweigh the common issues.

Were Terrell's proposed class to be certified, individualized inquiries would predominate.  Terrell's cause of action against Defendants is negligent failure to warn.  In order to sustain such a claim, Terrell must prove that Defendants "knowingly placed a dangerous product on the market, the dangerous condition of which is unnoticeable, and failed to properly warn of the dangerous condition."  *Union Carbide Corp. v. Kavanaugh*, 879 So. 2d 42, 44 (Fla. 4th DCA 2004) (citing RESTATEMENT (SECOND) OF TORTS § 388 (1965)).  While Defendants' knowledge of the dangerous condition of E10 may or may not be demonstrated by common proof, the element that Defendants failed to properly warn boat owners is certainly subject to individual inquiry.  As Terrell points out in his explanation for the need to use the market share liability theory, proposed class members purchased E10 from stations across the State, including marinas.  Some of the fuel stations provided

22

Case No. 08-61294-CIV-ALTONAGA/Brown

some warning that E10 is not suitable for marine use while others had no warnings, other than the fact that the fuel contained up to 10 percent ethanol. As to each individual plaintiff, then, the Court would have to determine where that particular plaintiff purchased fuel, and what, if any, warnings were in place at that station at that time or at different times.

Under Florida law, any claim for negligence necessarily requires a showing that the defendant's negligence proximate caused plaintiff's damages. *See, e.g., Sanderson v. Eckerd Corp.*, 780 So. 2d 930, 933 (Fla. 5th DCA 2001); *Miller v. Selden*, 591 So. 2d 1063, 1065 (Fla. 4th DCA 1991). To succeed at trial, therefore, Terrell must show that Defendants' failure to warn of the dangers of E10 was the proximate cause of the damage to the fiberglass fuel tanks. This requisite showing raises two issues of individualized inquiry. First, each proposed class member must demonstrate that had warnings of the danger of E10 existed, he or she would have heeded those warnings and not used E10 in his or her boat. While Terrell maintains that any reasonable boat owner would not knowingly place E10 in a tank if proper warnings are evident, the Court cannot simply make this assumption. Non-ethanol blended fuel does exist in Florida, but it is more difficult to find than E10 and is generally more expensive than E10. It is conceivable that some boat owners, even if warned that E10 might damage their fuel tanks, would opt for the convenience and lower cost of E10, and assume the risk of damage. Indeed, Terrell himself continues to use E10 in his boat despite his knowledge of the risks.

The proximate cause requirement also mandates an individualized inquiry into whether each proposed class member had personal knowledge that E10 could damage fiberglass fuel tanks. As Defendants point out, information is available from many sources that E10 may not be appropriate

23

Case No. 08-61294-CIV-ALTONAGA/Brown

for use in marine engines. Many boat manufacturers warn against using E10 in the owners' manuals, some marinas post warnings against E10 usage, and a great deal of information is readily accessible on the internet concerning the potential damage of using E10 in fiberglass fuel tanks. As to each proposed class member, the Court would need to inquire whether he or she had any knowledge of the interaction of E10 with marine engines, the extent of any prior knowledge, and whether an additional warning would have prompted the person to fuel the boat with ethanol-free gasoline.

Terrell's experts assert that a single use of E10 in a fiberglass fuel tank begins an unstoppable degradation process, and no individual examination of fiberglass fuel tanks is necessary. Defendants' experts adamantly disagree. Defendants maintain that Terrell's theory is purely speculative and anecdotal, and they demand the right to conduct a physical examination of each fuel tank at issue. As Defendants explain, if Terrell's experts are correct that a single use of E10 degrades fiberglass tanks, one would expect to see many failed fiberglass tanks throughout Florida and the rest of the country. Nevertheless, Terrell has not identified a single boat owner with a failed fiberglass fuel tank other than himself. Terrell has not presented a single affidavit from a boat owner or mechanic who has experienced the E10 degradation, nor any other physical evidence in other tanks. Terrell seeks to certify a class based on only one documented instance of E10 causing damage to a fiberglass tank. Because of the lack of unanimity among experts, and the dearth of evidence that Terrell's type of damage has been experienced by any other boat owners, inspection of the fuel tank of each proposed class member is a reasonable request to determine whether any existing damage was actually caused by E10.

As a corollary to the necessity of inspecting each fiberglass tank to establish causation, an

Case No. 08-61294-CIV-ALTONAGA/Brown

inspection of each boat of the proposed class members would be required in the damages portion of a trial.  Terrell suggests that damages estimates could be made among "classes" or "lines" of boats, and that the individualized inquiry would be largely ministerial.  This suggestion is not reasonable. Damage awards cannot be made on hypothetical or speculative bases.  Even given a particular line of boats, and assuming that a fiberglass tank must be replaced, damages may differ widely, and a Defendant being asked to pay for the replacement of a tank has the right to an individualized inquiry. If a particular boat has been retrofitted, it may be more difficult, or more simple, to remove and reinstall a new tank than in other boats of the same line.  Additionally, many fiberglass tanks may have experienced no damage at all because they are composed of the resins compatible with E10, or because the boats have been refitted with diesel engines.  Terrell's suggestion to estimate damages among certain types of boats deprives Defendants of their right to dispute the alleged damages and the cause of any damage on a claimant-by-claimant basis.  Defendants are not unreasonable in requesting that damages determinations occur following an in-depth, individual analysis.

Further, the amount of damage to a particular boat may exceed the value of that boat.  If, for example, a boat owner had failed to maintain the boat properly, and the boat is in poor condition, an estimated damage award would create a windfall for the boat owner at Defendants' expense.  The value of each boat would have to be determined before any damages could be awarded to any boat owner.

Under Florida law, comparative fault is always an issue in a negligence claim.  *Gilchrist Timber Co. v. ITT Rayonier*, 696 So. 2d 334, 338 (Fla. 1997) ("comparative fault principles shall apply in negligence cases") (citing Section 768.81, Florida Statutes).  As one court has noted,

25

Case No. 08-61294-CIV-ALTONAGA/Brown

> Florida's law of comparative fault as codified in section 768.81, Florida Statutes, which by its clear terms would govern Plaintiffs' causes of action for negligence, strict liability, and products liability, poses an almost insurmountable obstacle to certification of any liability issue. This Court cannot conceive of how such a determination of apportionment of fault can be dealt with on a classwide basis given the myriad of individualized factors that would affect such an apportionment under the facts of this case . . . .

*Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 652 (M.D. Fla. 2001) (footnote call number omitted). Defendants have the right to assert the comparative fault defense, and its assertion would involve individual inquiries concerning each proposed class member's knowledge and behavior. Inquiry would be necessary as to whether each boat owner received an owner's manual that warned against the use of E10; whether any had ever been told by a mechanic not to use E10; whether any had ever seen a warning sign at a marina or researched E10 on the internet; and whether, despite personal knowledge, the boat owner nonetheless chose to fuel the boat with E10 based on convenience and cost savings.

Finally, Terrell's market share liability theory in itself necessitates individualized inquiries. Under *Conley*, the market for an individual plaintiff must be as narrowly tailored as possible. Terrell's desire to deem the market the entire State of Florida is entirely unworkable in light of the mandates of *Conley*, and the requirement that a defendant have the opportunity to exculpate itself with a showing that it did not distribute the defective product within the specified geographic market area. Accordingly, a narrowly tailored geographic market will have to be established for each proposed class member, and a determination made as to whether each Defendant sold E10 in that geographic market in the time period in question. Such an inquiry is highly fact-specific and would entail a great deal of individualized inquiry as to both proposed plaintiffs' fuel-buying habits and

26

Case No. 08-61294-CIV-ALTONAGA/Brown

each Defendant's presence in particular geographic areas.

Upon a review of the totality of common versus individualized inquiries, it is clear that the predominance prong of Rule 23(b)(3) is not met. Although some issues may be proven by common facts and legal theories, the majority of the issues must be determined on a boat-by-boat, owner-by-owner basis, rendering this case unsuitable for class certification.

> b.   *Superiority*

To determine whether a class action is the superior method for fairly and effectively adjudicating a controversy, Rule 23(b)(3) lists four factors to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit has explained, "[a]lthough the factors listed in Rule 23(b)(3)(A)-(D) are important and generally should inform courts' analysis, we do not mean to go so far as to suggest that consideration of every factor listed in Rule 23(b)(3)(A)-(D) is strictly mandatory in every case." *Vega*, 564 F.3d at 1278, n.19.

Terrell does not specifically address the first factor concerning whether the proposed class members have an interest in individually controlling the prosecution of the action, although he notes that individual suits would be impracticable. Defendants are large oil companies; to litigate against them would be expensive and time-consuming and likely daunting for an individual plaintiff. Terrell

Case No. 08-61294-CIV-ALTONAGA/Brown

urges the Court to consider that without the possibility of recovering attorney's fees in a class action, plaintiffs' attorneys are unlikely to take these cases. Terrell further notes that, in consideration of the second factor, no individual actions have been initiated against the Defendants for a claim similar to Terrell's.

According to Defendants, the proposed class members have an interest in controlling the prosecution of their individual claims. Defendants note that while the proposed class is composed of boat owners whose fiberglass fuel tanks have suffered damage due to E10, Terrell has identified more than a dozen different injuries E10 may cause to boats. For class members with injuries other than fiberglass tank degradation, an interest in controlling their own litigation clearly exists. Additionally, some class members may be able to prove precisely where they purchased their E10 and would not have to rely upon the market share liability theory. In such a case, the particular defendant may have fewer affirmative defenses available, and the action may be considerably less complex and less expensive to litigate. Neither side has made an entirely compelling argument either for or against superiority on the first two factors.

The parties also fail to address the third factor, which asks whether it is desirable to concentrate the litigation in this particular forum. The undersigned cannot see why the Southern District of Florida is any better or worse a forum in which to litigate this action than any other. Boat owners are found throughout the State, from the Panhandle to the Florida Keys. There may or may not be a greater concentration of boat owners in the southern part of the State; the parties have not provided any evidence on this point. Given the geography of the State, any forum will require some plaintiffs to travel farther than others, and information regarding scientific findings can be

28

Case No. 08-61294-CIV-ALTONAGA/Brown

disseminated in any courtroom in the State.  The third factor, then, weighs neither for nor against a finding of superiority.

The parties, like the Eleventh Circuit in *Vega*, focus on the fourth factor of the superiority analysis: the likely difficulties in managing a class action.  564 F.3d at 1278.  In *Vega*, the court noted that

> Due to the central individualized issues discussed above that preclude findings of commonality, typicality, or predominance, any trial of this case would require the presentation of a substantial amount of evidence specific to each of an unknown number of class members. This reality poses serious challenges to the efficiency and manageability of a class action proceeding.

*Id*.  A similar concern exists here.  The numerous individual issues that predominate in this case render it unwieldy and unmanageable as a class action.  Because the Court finds that individual rather than common issues predominate, Plaintiff's reliance on *Williams v. Mohawk Indus. Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009) ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions.") (*see Motion* at 39), is misplaced.

In his effort to obtain certification in the face of the stated obstacles, Terrell proposes a two-phase trial plan.  In this plan, the first phase will address liability and focus on Defendants' knowledge and failure to warn boat owners of the dangers of E10.  Terrell asserts that the liability phase can proceed on common facts and legal theories.  Terrell ignores, however, the issue of causation and affirmative defenses, which are entirely individual in nature.  The second proposed phase addresses damages.  Although Terrell contends that the damages determinations can be made according to estimates and boat types, as already explained, that method of determining damages

29

Case No. 08-61294-CIV-ALTONAGA/Brown

cannot stand in fairness to Defendants.  Instead, the damages phase of the trial would consist of a mini-trial for each individual class member.  This trial plan does not promote judicial efficiency, nor is it superior to other methods of adjudicating potential claims against Defendants.

> 4.        The Proposed Class Is Not Suitable for Certification under Rule 23

Considering the totality of the analysis under Rules 23(a) and (b), it is clear that Terrell's proposed damages class is not suitable for certification.  The class fails to satisfy all of the factors in Rule 23(a), as required, and satisfies neither the predominance nor the superiority requirement of Rule 23(b)(3).

**B.      The Warning Class**

> 1.        Whether the Class Is Ascertainable

Terrell defines the proposed warning class as "all persons who purchased E10 in the State of Florida for use in their boat." (*Hearing* at 114).      During the hearing, the issue was raised that in order to be proper class members, boat owners would also have to have been unaware that E10 is potentially harmful to boats; had they already known, they would not need a warning.  (*Id*. at 114-16).  Terrell took the position that so long as it can be established "that there are reasonably prudent boaters out there who don't know and the information is insufficient and we can at a merits stage prove that, then we get our warning at the pumps."  (*Id*. at 116-17).

This position is incongruous given the nature of the relief sought.  Terrell may or may not be able to receive injunctive relief against Defendants, requiring that Defendants post E10 warnings at the pumps.  But Terrell cannot obtain certification of a "warning class" that includes individuals who are already aware of the dangers of E10.  Terrell's class definition is grossly overbroad in this

Case No. 08-61294-CIV-ALTONAGA/Brown

regard. Moreover, were the warning class to be narrowed only to those boat owners who are unaware that E10 poses a threat, individual inquiry would have to be made as to each boat owner's knowledge prior to using E10. Terrell provides no mechanism for narrowing the class such that members may be readily ascertained.

2       Certification under Rule 23(a)

a.       *Numerosity*

Terrell argues that "Plaintiff's proposed class easily satisfies the numerosity requirement." (*Motion* at 22). He further states that, "numerosity is patently not an issue with respect to the injunctive class, since it is comprised of the owners of more than 1,000,000 boats registered with the Florida Department of Highway Safety and Motor Vehicles ("FDHSMV"), in each of the years 2007 and 2008." (*Id*. at 22-23). Terrell goes on to note that hundreds, if not hundreds of thousands of these boats are powered by gasoline. (*See id*. at 23). That is the totality of Terrell's argument as to numerosity for the warning class.

The parties do not dispute that E10 is the most readily available fuel in the State, and that few stations offer ethanol-free gasoline. Accordingly, many of those potentially hundreds of thousands of owners of gasoline powered boats may have purchased E10. As discussed regarding the damages class and numerosity, ethanol-free fuel is available at many marinas, and many, if not most, boat owners purchase their fuel from marinas rather than from roadside stations. Nonetheless, even if a small percentage of boat owners purchased their fuel from roadside stations, the number of class members will likely be above 40. Similarly, if the class is narrowed to those boat owners who were not aware of the problems associated with E10, the class will be reduced from its approximate

Case No. 08-61294-CIV-ALTONAGA/Brown

"millions" to a number that would not likely get below 40.

While Terrell has presented numbers that would seemingly satisfy numerosity, he has failed to establish numerosity with anything but speculation that, given the great starting number, the proposed class simply must satisfy numerosity. As the Eleventh Circuit explained in *Vega*, the large pool of employees at a company like T-Mobile did not, in itself, establish numerosity. 564 F.3d at 1267. Terrell's speculative methodology used to establish numerosity does not satisfy Eleventh Circuit standards.

b.     *Commonality*

Terrell asserts commonality is satisfied because the following issues of fact and law are common to all members of the proposed class:

1.     Whether Defendants knew or should have known that:

a.     boat owners purchase E10 at service stations and marinas in Florida;

b.     the chemical properties of E10 create a risk that E10 will likely cause damage to some types of fiberglass fuel tanks used in boats in Florida, and that such damages constitute a "signature" injury attributable only to the use of E10;

c.     the chemical properties of E10 create a significant risk that phase separation will occur when used in boats in a marine environment;

d.     the chemical properties of E10 can cause corrosion of boat engine parts due to the presence and transport of salt and water;

e.     the chemical properties of E10 make it potentially incompatible with certain rubber, composite, and plastic fuel lines, gaskets, and o-rings commonly used in boats;

32

Case No. 08-61294-CIV-ALTONAGA/Brown

     f.    when E10 is phase separated, it can overwhelm the capacity of the fuel filter or filter coalescer (water separator filter) commonly used in boats, and that such damages constitute a "signature injury" attributable only to the use of E10;

     g.    the chemical process of phase separation results in octane reduction in the gasoline, which causes operation problems and can cause damage to boat engines;

     h.    the chemical properties of E10 cause it to act as a solvent when placed in boat fuel tanks, causing clogged fuel filters when materials stuck to fuel tank walls are loosened and mix with the gasoline;

2.    Whether, under Florida law, Defendants had a duty to warn based upon the chemical properties of E10 that causes risks of damage when used in boats;

3.    Whether the warnings and information (if any) provided by Defendants regarding the risks associated with using E10 in boats were adequate under applicable Florida law;

4.    Whether Defendants substantially participated in the blending process to create E10;

5.    Whether Defendants have component liability for the manufacture, distribution, and sale of blend stock/ base gasoline, fuel-grade ethanol, and E10;

6.    Whether the nature of the sale, exchange, commingling and blending of E10 during the various stages of the distribution process negate class members' ability through a reasonably diligent inquiry to determine which Defendant blended the E10 and manufactured the component parts of the E10 that caused boat damage;

7.    Whether E10, and its gasoline and ethanol components, are fungible; and

8.    Whether the risk of harm of E10 sold to boaters by the various Defendants in this action was the same;

(*Motion* at 24-25).

As noted, commonality is a relatively easy burden. *Vega*, 564 F.3d. at 1268.  Indeed,

33

Case No. 08-61294-CIV-ALTONAGA/Brown

Defendants do not challenge Terrell's assertion that he has satisfied the commonality requirement.

Accordingly, this factor is met.

          c.     *Typicality*

Terrell maintains he satisfies the typicality requirement to serve as a representative for the

proposed warning class.  Terrell asserts his claims are typical of all class members, stating:

> Just as all proposed class members, Plaintiff Terrell purchased E10 in Florida that
> was produced, distributed, or sold by the Defendants.  Just like all other class
> members, the ultimate source of the E10 and its component parts is not readily
> identifiable through a diligent search because of the fungibility and commingling of
> the gasoline and ethanol components of E10, as well as E10 itself.  The lack of
> adequate warnings affects Plaintiff Terrell the same as all other class members.
> Hence, Plaintiff is typical of all members of the proposed class for declaratory and
> injunctive relief.

(*Motion* at 25-26).

Defendants insist that Terrell's claim is not at all typical of the claims of members of the

proposed warning class.  First, Terrell has replaced his fiberglass tank with an aluminum tank,

rendering all warnings as to the dangers of E10 for fiberglass tanks inapplicable and unnecessary.

Moreover, in spite of numerous alleged dangers to boats in addition to fiberglass tank degradation,

Terrell continues to use E10 to fuel his boat.  As was the case with the damages class, Terrell is also

atypical of many, perhaps most, boat owners, who generally fill their tanks at marinas rather than at

roadside gas stations.  Finally, Terrell is not typical of the rest of the members of the warning class

as he is well aware of the potential dangers of E10, and consequently does not need a warning.

Terrell's position is quite different from that of the proposed class members.  Typicality as to the

warning class is not satisfied.

Case No. 08-61294-CIV-ALTONAGA/Brown

       d.    *Adequacy of Representation*

Terrell claims to be an adequate representative of the warning class, making essentially the same argument for his adequacy as he did in regard to the damages class. Again, Defendants disagree that Terrell satisfies the adequacy requirement.

Defendants argue that Terrell is an inadequate class representative because he has no standing to make a claim for injunctive relief against the Defendants. The Eleventh Circuit has explained, "it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman*, 221 F.3d at 1279. The court further explained that:

> It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."

*Id*. at 1280 (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)).

In *City of Los Angeles v. Lyons*, the Supreme Court held that an individual has no standing to seek injunctive relief where the individual fails to show a real threat of continuing harm. 461 U.S. 95 (1983). In *Lyons*, the plaintiff had been placed in a chokehold by police officers following a stop for a traffic violation. *Id*. at 97. The plaintiff sought injunctive relief on the ground that it was a policy and practice of the Los Angeles police department to use chokeholds on people who were detained, regardless of whether the police officers were in a life-threatening situation. *Id*. at 98. The Court determined the plaintiff had no standing to seek injunctive relief as he could not show there

Case No. 08-61294-CIV-ALTONAGA/Brown

was a real and immediate threat that he would be stopped again by police and placed in a chokehold. *Id*. at 105. In other words, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *Id*. at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

In this case, Defendants assert that while Terrell may have standing to state a claim for damages he sustained due to E10, he has no standing to state a claim for injunctive relief requiring Defendants to post warnings at the pumps. Terrell is well aware of what E10 may do to boat engines and fuel tanks. In his deposition, Terrell stated he had heard from other boat owners that E10 might be dangerous to fiberglass tanks. He then did research on the internet and found information about E10 and fiberglass tanks. Terrell talked to mechanics and boat dealers about the use of ethanol blended fuels in boats and talked to a fuel supplier at a gas station who stated he had discovered a number of problems with E10 in the marine industry. Throughout the course of this case, Terrell has retained experts and has had numerous reports prepared about the dangers of using E10 in boats. Terrell has replaced his fiberglass fuel tank with an aluminum tank, and in spite of all of his knowledge about E10, *he continues to use E10 to fuel his boat*. Terrell cannot show, in accordance with *Lyons*, that he is in real and immediate danger of harm from E10 absent a warning at the pumps. In short, he has no standing to seek injunctive relief.

Terrell argues that to deny certification of a warning class due to his lack of standing precludes certification of any warning class, ever. Terrell asserts that, under Defendants' logic, no representative plaintiff could ever have standing to bring a claim for an injunctive remedy consisting

36

Case No. 08-61294-CIV-ALTONAGA/Brown

of a warning because a representative plaintiff would, of necessity, be aware of the problem by the time he sought to serve as representative of the warning class. According to Terrell, the Court should intervene to remedy this problem by permitting him to serve as the representative of the warning class despite his comprehensive knowledge of the potential problems of E10.

The Court cannot do what Terrell requests. Terrell is required to have standing to bring an injunctive claim, on his own behalf and on behalf of the class, but he does not. At the hearing, the parties acknowledged that after exhaustive research they had been unable to find a single case in which a class was certified in a failure-to-warn scenario. Indeed, considering the holding of *Lyons* and its progeny, it appears impossible for such a representative plaintiff to exist. As the Court explained in *Lyons*, Terrell is not without a remedy; Terrell may pursue his damages claim against the Defendants and seek monetary relief. But Terrell has no standing to represent a warning class, and is therefore an inadequate class representative.

       3.     Certification under Rule 23(b)

Terrell seeks to certify the warning class under Rule 23(b)(2), which provides that certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). Terrell claims that certification is appropriate here because

> Defendants all introduced E10 into the Florida market without providing adequate (any) warnings or information disclosing the potential harm caused by E10 to boats – despite not only their knowledge of the harmful effects, but their internal recommendations that E10 is not a suitable gasoline for boats. . . . Based upon the foregoing, Defendants' conduct falls squarely within the ambit of the first requirement under Rule 23(b)(2), and there is no requirement to prove predominance under Rule 23(b)(2).

37

Case No. 08-61294-CIV-ALTONAGA/Brown

(*Motion* at 39-40). Terrell recognizes that Rule 23(b)(2) contains a predominance requirement as does Rule 23(b)(3), and contends that "[t]he second prerequisite to relief under Rule 23(b)(2) is that the plaintiffs must be seeking final injunctive or declaratory relief against the party opposing the class." (*Id*. at 40, quoting *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 674 (S.D. Fla. 1997)). Terrell fails to note, however, that certification under Rule 23(b)(2) contains a "cohesiveness" requirement. *See Metabolife Int'l, Inc*., 218 F.R.D. at 273. "In fact, the class claims under this subpart 'may require more cohesiveness than a [Rule 23](b)(3) claim . . . because in a [Rule 23](b)(2) action, unnamed members are bound by the action without the opportunity to opt out.'" *Id*. at 273-74 (quoting *Barnes v. American Tobacco Co*., 161 F.3d 127, 143 (3d Cir. 1998)) (ellipses and brackets in original).

In *Heffner v. Blue Cross & Blue Shield of Ala., Inc*., 443 F.3d 1330, 1345 (11th Cir. 2006), the court stated that "[c]ertification under Rule 23(b)(2) is proper when the relief sought necessarily affects all class members." The court further explained:

> Success by the class representative in this case, however, will not result in relief to other class members. That is because, in order to be entitled to the relief that the class seeks, each plaintiff must prove reliance on the SPD [summary plan description] of his or her plan. Injunctive or declaratory relief, and any other equitable relief based on it, will not automatically flow to the class "as a whole" even if Heffner succeeds in proving reliance on his SPD.

*Id*. at 1345 (alteration added).

The scenario here is comparable to that in *Heffner*. As Defendants point out, a failure to warn can only damage an individual plaintiff if that plaintiff is not already aware of the danger. Information about the possible dangers of using ethanol-blended gasoline is available from a variety of sources: signs at marina fuel stations, the internet, boat user manuals and brochures, Coast Guard

Case No. 08-61294-CIV-ALTONAGA/Brown

publications, advice from marine mechanics, and general word of mouth in the boating industry. Each individual proposed class member would need to be questioned as to whether he or she had ever been exposed to any of these sources of information. If any proposed class members have knowledge that E10 may harm their boats, those plaintiffs would not receive any relief from a warning at the pumps. Because Terrell's proposed class is so broad – every boat owner in the State of Florida who has purchased E10 – the injunctive relief sought would not automatically flow to the class as a whole.

There is no doubt that Defendants are aware of the potential dangers of using E10 in marine engines. Defendants have disseminated information regarding the dangers of using E10 in fiberglass tanks within their own industry to avoid problems with storing E10. They have provided warnings at the pumps to some consumers, in some countries, but have not done so to their consumers in Florida. Clearly, the public would be better served by making an educated choice at the pumps, rather than seeking relief from Defendants after their boats have been damaged by the incompatible fuel. That fact notwithstanding, certification of a warning class is inappropriate for the many reasons described. In the absence of regulation, the manufacturer of a defective product may of its own accord begin to publish warnings after paying out damages to successful plaintiffs. As the Supreme Court has observed, "'regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)). Thus, while a need for a warning may exist, the method to achieve that

Case No. 08-61294-CIV-ALTONAGA/Brown

warning is not through the certification of the proposed class.

## IV.  CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Terrell's Motion for Class Certification **[D.E. 443]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of November, 2009.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

40